**Yusef SALEEM, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 2, 2011.

Decided Jan. 27, 2012.

---

Reginald Allen, Philadelphia, for petitioner.

Maribeth Wilt–Seibert, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Yusef Saleem (Claimant) petitions for review of the Order of the Unemployment Compensation Board of Review (Board), which affirmed an Unemployment Compensation Referee's (Referee) determination finding Claimant ineligible for benefits because his actions constituted disqualifying willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law),[1] 43 P.S. § 802(e). Claimant argues, *inter alia,* that the Board erred in finding him ineligible for benefits because: (1) the reason given for Claimant's discharge was not the reason cited by the Referee and Board in finding him ineligible for benefits; (2) Children's Crisis Treatment Center (Employer) did not meet its burden of proving that Claimant engaged in willful misconduct; and (3) even if Employer established a rule violation, Claimant had good cause for his actions. Additionally, Claimant asserts that he was denied a fair and impartial hearing because Employer's representative at the hearing was the Referee's former supervisor and the Referee reflected bias towards Employer by improperly assisting Employer in satisfying its burden of proof.

Claimant worked for Employer in three positions, the most relevant being his work as a school clinician from February 12, 2003 until June 3, 2010. (Referee's Decision, Findings of Fact (FOF) ¶ 1.) Employ-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended.* Section 402(e) provides that a claimant will be ineligible for compensation where his unemployment is due to "willful misconduct connected with his work." 43 P.S. § 802(e).

er provides the School District of Philadelphia (District) therapeutic and intervention services for troubled students who are enrolled in the District. (FOF ¶ 2.) Claimant worked with one such student (Student) who was twelve years old, six feet tall, who had been subject to sexual trauma or abuse, and who attended school at General John F. Reynolds Elementary School (School). (FOF ¶¶ 3, 11–12.) On June 2, 2010, Student became upset with Claimant and began running down the hallway, "banging on door windows with his fist, kicking doors, and screaming obscenities." (FOF ¶ 13.) "When [Claimant] approached [Student], [Student] struck [Claimant] with his elbow," and "then ran into the bathroom." (FOF ¶¶ 14–15.) "[Claimant] followed [Student] into the bathroom" and did not request help "before entering the bathroom." (FOF ¶¶ 16–17.) Student then pushed Claimant into the door jamb of the bathroom door, ran past Claimant, and ran down to the School Principal's (Principal) office, whom he told that Claimant had punched him twice in the stomach. (FOF ¶¶ 18–19.)

After Student ran out of the bathroom, Claimant began writing an incident report regarding what occurred. (FOF ¶ 20.) While Claimant was completing his report, Employer's lead clinician at the School, Patricia Palermo, asked Claimant if he had followed Employer's protocol, to which Claimant responded that he entered the bathroom because he was concerned that Student "might hurt himself or someone else." (FOF ¶¶ 21–22.) Ms. Palermo told Claimant that he should contact his supervisor, Leslie Becton, and that he should not file a police report until after speaking with Mrs. Becton. (FOF ¶ 26.) Thereafter, Principal called Claimant to her office, where Student and two police officers were present. (FOF ¶ 23.) Claimant showed the police officers the scrape on his arm and cut on his hand that he sustained when Student pushed him, and the police officers arrested Student. (FOF ¶ 24.) The police officers "instructed [Claimant] to report to the Central Detectives Division to speak with a detective," which Claimant did and, while there, Claimant requested that charges be filed against Student. (FOF ¶¶ 24, 25.) At around 4:00 p.m. that afternoon, Claimant spoke with Mrs. Becton and "informed her that he had filed [a] police report to protect himself." (FOF ¶ 27.) Mrs. Becton advised Claimant that Principal did not want him to return to the School "because of the conflict between [Claimant] and the students at that point." (FOF ¶ 28.) Employer told Claimant to complete his paperwork and case notes, which he completed on June 3, 2010. (FOF ¶ 29.) "On June 18, 2010, [Employer] informed [Claimant] that he was discharged for reason of unprofessional conduct because he filed criminal charges against" Student. (FOF ¶ 30.)

Claimant applied for benefits, stating that he was discharged for "unprofessional conduct" because he filed criminal charges against Student, and Employer did not submit an Employer's Separation Questionnaire. (Internet Initial Claims at 2–3, R. Item 2.) The Philadelphia Service Center (Service Center) found Claimant eligible for benefits because there was insufficient evidence to show whether Claimant engaged in any disqualifying conduct under Section 402(e). (Notice of Determination, September 15, 2010, R. Item 3.) Employer appealed, stating "[C]laimant worked ... as an independent contractor" and "[C]laimant was not an employee of this" Employer. (Employer's Petition for Appeal from Determination, September 30, 2010, R. Item 4.) The matter was assigned to Referee, who held a hearing at which Claimant, who was pro se, and three Employer witnesses, Ms. Palermo, Mrs. Bec-

ton, and Renee Griffin, a Human Resources representative, testified. At the beginning of the hearing, Referee informed the parties that Employer's representative previously had worked for the Department of Labor and Industry and had been Referee's supervisor. (Referee Hr'g Tr. at 2–3.) Referee asked whether Claimant objected to his considering Employer's appeal, to which Claimant responded that he did not object. (Referee Hr'g Tr. at 2–3.)

Mrs. Becton testified that Claimant was discharged because of the June 2, 2010, incident. She stated that "after the incident was over, [Claimant] was injured and he, instead of contacting myself, which he was informed to contact, he filed a police report" and that "[t]he [P]rincipal ... of the [S]chool that I provide services to, she didn't feel it ... ma[d]e any appropriate sense for [Claimant] to return back to the [S]chool to provide therapeutic services" "[b]ased on the filing of the police report." (Referee Hr'g Tr. at 10, 16–17.) However, she acknowledged that Employer does not have a "particular policy" with regard to filing a police report against a student. (Referee Hr'g Tr. at 15.) Mrs. Becton described, generally, Employer's policies on how to deal with student confrontations, which require that the staff member talk to the student in calm voices so as not to "escalate" a student's behavior any further, the staff member should try not to approach the student or follow the student into a closed off area so that the student feels he could not escape, and should handle the student as required by their treatment plan. (Referee Hr'g Tr. at 11.) Mrs. Becton stated that, if a student is destroying property, the staff member should try to get the student to Employer's therapy room with the assistance of another staff member so that the student can calm down, which she acknowledged was some distance away from where the incident occurred. (Referee Hr'g Tr. at 13, 26.) She stated that, if a student is in danger of harming himself or someone else, there are approved physical restraints that staff members learn. (Referee Hr'g Tr. at 13.) Mrs. Becton indicated that Claimant would be aware of these policies through his training with Employer, particularly the approved physical restraints. (Referee Hr'g Tr. at 14.) However, she indicated that there had not been any discussion on what an employee should do if a student becomes "assaultive." (Referee Hr'g Tr. at 21.) Employer's representative asked Mrs. Beacon, "You testified also that one of the reasons for [Claimant]—could [Claimant] have been terminated for this violation in and of itself?," to which Mrs. Becton responded, "Yes." (Referee Hr'g Tr. at 14–15.)

Ms. Griffin testified as to the specifics of Claimant's employment and that, to her knowledge, Claimant would have been discharged even if Principal had not requested Claimant's removal from the School. (Referee Hr'g Tr. at 27.) However, she acknowledged that she was "not actually involved in the actual process" and that the person in charge told her that Claimant was discharged "because he had an incident in the [S]chool with a child." (Referee Hr'g Tr. at 27.) Ms. Griffin stated that the only training documents she had in Claimant's file were those that were associated with the approved physical restraint techniques. (Referee Hr'g Tr. at 28.) Ms. Griffin also acknowledged that, to her knowledge, there was no documentation regarding what Claimant would have to do if he was injured on the job or prohibiting him from filing a police report against a student. (Referee Hr'g Tr. at 28–29.)

Ms. Palermo testified that she had not witnessed the event herself, but learned of it from someone else. (Referee Hr'g Tr.

at 31.) She stated that, when she saw Claimant, he was writing his report regarding what happened and he explained to her what happened with Student. (Referee Hr'g Tr. at 32.) Ms. Palermo indicated that she told him to call Mrs. Becton and that, when she next saw him, Claimant was going to file a police report. (Referee Hr'g Tr. at 33.) Ms. Palermo testified that she informed Claimant that he should speak with Mrs. Becton before filing the police report, to which Claimant responded that he was "not going to be thrown under the bus." (Referee Hr'g Tr. at 33.) Ms. Palermo indicated that Claimant and others were informed that no staff member should touch Student because of his past history of sexual abuse. (Referee Hr'g Tr. at 38.) She acknowledged that Student is frequently involved in aggressive confrontations. (Referee Hr'g Tr. at 38.)

Claimant testified that he was discharged from his employment for unprofessional conduct in connection with filing the police report against Student and that no other reason was given for his discharge. (Referee Hr'g Tr. at 39–40.) Claimant described the June 2, 2010, incident, stating that he observed Student in the hallway being confronted by several female students about Student physically touching them and Claimant advised the female students that if Student, or anyone else, touched them in a manner they did not like, they had the option of calling the police. (Referee Hr'g Tr. at 41.) According to Claimant, Student became enraged and began screaming more obscenities, kicking doors, hitting windows, and Claimant repeatedly asked Student to calm down, indicating that he could call Student's mother to take Student home if Student wanted. (Referee Hr'g Tr. at 41–42.) Claimant stated that he moved toward Student and Student pushed his elbow into Claimant's chest. (Referee Hr'g Tr. at 42.) Claimant testified that Student then starting banging the window to the bathroom door and went into the bathroom. (Referee Hr'g Tr. at 42.) Claimant explained that, because he was afraid that Student was going to hurt himself or someone else who may have been in the bathroom, he pulled open the bathroom door and, as he was opening the door, Student pushed Claimant into the door jamb and, when Student attempted to push Claimant again, Claimant shifted and pushed Student away. (Referee Hr'g Tr. at 42.) Claimant stated that Student then left the bathroom and went down to Principal's office. (Referee Hr'g Tr. at 42.) Claimant indicated that, after Student left, another staff member pointed out Claimant's scrapes and cuts on his hands and elbows, which he cleaned; he called Student's mother; he started filling out an incident report; and he was requested to go to Principal's office. (Referee Hr'g Tr. at 42–43.) Claimant testified that he told Ms. Palermo that, if Principal called the police, he was going to file charges, which is what happened, but Claimant denied that he said anything about being thrown under a bus. (Referee Hr'g Tr. at 44–45.) Claimant indicated that, when the police officers saw his injuries, they took Student into custody and told Claimant to go to the police station and fill out a report, which Claimant did. (Referee Hr'g Tr. at 46.) Thereafter, the District Attorney's Office contacted Claimant before he was discharged and asked him if he would accept a consent decree for Student, and Claimant indicated that he would. (Referee Hr'g Tr. at 47.) On cross-examination, Claimant acknowledged that one should not escalate a situation with a student and that following Student to the bathroom might escalate the situation. (Referee Hr'g Tr. at 49–50.) Claimant stated that he did not call for assistance because there

was no other staff person in the area. (Referee Hr'g Tr. at 50.)

Referee made additional findings of fact pertaining to Employer's procedures for handling aggravated students whose behavior becomes highly emotional, disturbed, angry, combative, and who use foul language, destroy property, and exhibit a disregard for authority. (FOF ¶¶ 5–6.) Claimant was aware that, with certain exceptions, Employer did not want a student's movements blocked or for the student to feel that there was no escape. (FOF ¶ 7.) Employer's staff were to handle students consistent with the students' treatment plans and were not to individually approach or confront them. (FOF ¶ 8.) Where students were damaging property, Employer wanted staff to obtain the assistance of another staff member to escort the student to Employer's therapy room. (FOF ¶ 9.) Where students are endangering themselves or others, the employee can use the approved physical restraints against the student. (FOF ¶ 10.)

Based on this evidence and his findings of fact, Referee concluded that Claimant did not engage in willful misconduct when he filed the police report because he was instructed to go to the police station, provide statements to a detective, and Claimant has a lawful right to file charges. (Referee Decision at 3.) Referee further held that Employer did not present any testimony "to explain why [Claimant's] filing of charges against [Student] was contrary to [Employer's] interests or fell below the standard of behavior [E]mployer could expect of [C]laimant." (Referee Decision at 3.) However, Referee explained that:

The employer's appeal (SC–4) is non-specific as to the basis for disagreeing with the Department's determination, although the employer's agent asked that the claimant['s] eligibility be considered on the basis that the claimant was an independent contractor. Under the provisions of 34 Pa[.] Code § 101.87, the Referee is constrained to limit his consideration to the issues raised in the Notice of Determination. Thus, the Referee would normally be limited to considering the non-professional conduct as consisting of making the police report. However, where there is no surprise and the parties are prepared and, in fact, address other issues of performance, in the absence of any objection, the Referee may consider the additional bases that led to the termination of employment.

(Referee's Decision at 3.) Thus, Referee considered whether Claimant's actions in handling the incident with Student violated Employer's procedures. Referee concluded that they did and he was "not convinced that [Student] posed an immediate risk to himself or others such that the [C]laimant did not have time to call in to [Employer's] rooms that were a few steps away in order to obtain the required assistance and support." (Referee's Decision at 3.) Accordingly, Referee found that Claimant violated Employer's procedures, his actions were not justifiable under the circumstances and, therefore, Claimant was ineligible for benefits under Section 402(e) of the Law.[2] Claimant appealed to the Board. The Board affirmed Referee's decision and adopted that decision and its findings of fact as its own. Claimant now petitions this Court for review.[3]

---

**2.** Referee made no determination as to whether Claimant was an employee or an independent contractor. (Referee's Decision at 3.) There is nothing in the record that indicates

that Employer appealed this part of the Referee's decision.

**3.** "This Court's review in an unemployment compensation case is limited to a determina-

On appeal, Claimant raises multiple arguments as to why the Board erred in affirming Referee's decision and holding that Claimant was ineligible for benefits.[4] Claimant argues: (1) the Board erred in determining his eligibility for benefits based on being fired for his handling of the June 2, 2010, incident where Employer fired him for unprofessional conduct resulting from his filing criminal charges against Student; (2) Referee should have recused from considering this matter because of his relationship with Employer's representative; (3) Employer did not establish the existence of either work rules or procedures related to his actions on June 2, 2010; (4) his actions were not willful misconduct but amounted to misjudgment that did not manifest a wanton and willful disregard of Employer's interest; and (5) his actions in opening the bathroom door on June 2, 2010, were justified because he believed that Student was going to harm himself or others and, in holding otherwise, Referee erred in substituting his own judgment regarding how the situation was handled.

We first address Claimant's allegation that the Board erred in considering factors other than the reason Employer gave for discharging Claimant from his position. Referee found that Employer fired Claimant for unprofessional conduct because he

had filed criminal charges against Student. (FOF ¶ 30.) Claimant argues that, notwithstanding this specific finding, Referee and the Board considered his actions associated with the handling of Student during the June 2, 2010, incident, which Claimant asserts was improper because that was not the reason for his discharge from employment.

The Board acknowledges that, pursuant to the regulation found at 34 Pa.Code § 101.87,[5] it may consider only those issues raised in the Notice of Determination. (Board's Br. at 9.) However, the Board argues that, because Employer's appeal from the Notice of Determination was "nonspecific as to the basis for disagreeing with the Department's determination," and because "there [was] no surprise and the parties [were] prepared and, in fact, address [ed] other issues of performance, in the absence of any objection, the Board may consider additional reasons that led to Claimant's discharge." (Board's Br. at 9–10) (citing *Corbacio v. Unemployment Compensation Board of Review*, 78 Pa. Cmwlth. 70, 466 A.2d 1117 (1983) and *Kelly v. Unemployment Compensation Board of Review*, (Pa.Cmwlth., No. 1924 C.D. 2011, filed June 24, 2011).)[6] According to the Board, because the parties fully discussed the issue of Claimant's actions on June 2, 2011, it could consider whether

---

tion of whether constitutional rights were violated, errors of law were committed, or findings of fact were not supported by substantial evidence." *Carson Helicopters, Inc. v. Unemployment Compensation Board of Review*, 960 A.2d 524, 526 n. 6 (Pa.Cmwlth.2008).

4. Claimant asserts thirteen different allegations of error, which we have rearranged and consolidated for ease of resolution.

5. The regulation at 34 Pa.Code § 101.87 provides:

When an appeal is taken from a decision of the Department, the Department shall be

deemed to have ruled upon all matters and questions pertaining to the claim. *In hearing the appeal the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed.* However, any issue in the case may, with the approval of the parties, be heard, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby.

*Id.* (Emphasis added.)

6. We note that, because *Kelly* is an unreported opinion, it is considered only as persuasive and not precedential authority. 210 Pa.Code § 67.55.

those actions violated Employer's policy and could constitute willful misconduct under Section 402(e).[7]

█ We begin our discussion by noting that Referee specifically found that Claimant was discharged for filing criminal charges against Student and specifically held that such conduct was *not* willful misconduct. (Referee Decision at 3.) We agree with this conclusion, particularly where: Claimant was instructed to go to the police station and provide statements to a detective; Claimant had a lawful right to file charges; and Employer presented no testimony as to why such conduct would be contrary to Employer's interests or fell below the standard of behavior Employer could expect from Claimant. However, we disagree with the Board's assertions that, because Employer's appeal was non-specific and there was no surprise, it could consider whether Claimant was ineligible for benefits for a reason not asserted by Employer until the hearing before Referee.

█ Initially, we question the Board's statement that Employer's appeal from the Notice of Determination was non-specific. Employer had the opportunity to participate in the initial determination by the Service Center by filling out an Employer's Separation Questionnaire; Employer did not do so. Having failed to offer a defense at this preliminary stage, the Service Center issued its determination, indicating, essentially, that Employer did not establish its burden of proving willful misconduct under Section 402(e). Thereafter, Employer filed its appeal, asserting that the Notice of Determination was incorrect *because Claimant was not Employer's employee and was ineligible for benefits because he was an independent contractor.*[8] (Employer's Petition for Appeal from Determination, September 20, 2010, R. Item 4.) This was Employer's specific reason for challenging the initial finding of eligibility. Employer did not assert that Claimant had violated any work rule or procedure when handling the incident with Student. Notwithstanding Employer's stated reason for appeal, Referee determined that it would only consider whether Claimant was ineligible for benefits under Section 402(e), rather than remand the matter to the Service Center to consider that issue as contemplated in *Shearer v. Unemployment Compensation Board of Review*, 106 Pa. Cmwlth. 619, 527 A.2d 615, 618 (1987) (stating that due process and fairness require that a party has the option of having the matter remanded to the Service Center to consider the new reason for ineligibility or, when there has been no unfair surprise, the parties may agree to avoid the delay and address the new issue during the referee's hearing).

█ The Board takes the position that, because the witnesses discussed Employer's general policies and the incident

---

7. Although not defined by the Law, our Courts have defined
   [w]illful misconduct [a]s: (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; and (4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Altemus v. Unemployment Compensation Board of Review*, 681 A.2d 866, 869 (Pa. Cmwlth.1996). "Whether an employee's conduct rises to the level of willful misconduct is a question of law subject to our review." *Id.* at 869 n. 6.

8. Section 402(h) of the Law provides that a claimant is ineligible for benefits for any week in which he is engaged in self-employment, i.e., not an employee. 43 P.S. § 802(h).

was described by both Claimant and Employer's witnesses, it could render a decision on Claimant's eligibility based on whether Claimant's actions complied with these policies. However, "[i]n order to deny benefits to a discharged employee, *the employer's stated reasons for the discharge must be the actual cause of the claimant's unemployment.*" *Charles v. Unemployment Compensation Board of Review,* 764 A.2d 708, 711 n. 4 (Pa.Cmwlth. 2000) (emphasis added) (citing *Century Apartments, Inc. v. Unemployment Compensation Board of Review,* 30 Pa.Cmwlth. 485, 373 A.2d 1191, 1192 (1977)). "Not only must the employer prove the claimant committed some act which constitutes 'willful misconduct,' the employer must also prove that *the act in question was the actual reason for the claimant's discharge.*" *Panaro v. Unemployment Compensation Board of Review,* 51 Pa.Cmwlth. 19, 413 A.2d 772, 774 (1980) (emphasis added). The Board "may not in its findings rely on reasons for discharge that were not considered relevant by the employer." *Tundel v. Unemployment Compensation Board of Review,* 44 Pa.Cmwlth. 312, 404 A.2d 434, 435 (1979). The Board contends that, because Employer *could* have discharged Claimant for violating Employer's policies, it, essentially, could disregard the reason given by Employer for discharging Claimant and find Claimant ineligible on a different basis. However, this is contrary to *Charles, Panaro, Tundel,* and *Century Apartments.* Moreover, in reviewing the testimony of Employer's witnesses, it is apparent that none of the witnesses were involved in the actual decision to discharge Claimant. Indeed, Referee acknowledged this in his determination, stating "[n]otably, none of the witnesses presented by the [E]mployer were involved in the actual decision to discharge the claimant and were not present when the claimant was told the basis for his

separation from employment. Rather, they were the individuals who reported the information to upper levels of management, who communicated [C]laimant's discharge through a Human Resources manager...." (Referee's Decision at 3.) The Human Resources manager, the ultimate decision maker, did not testify at the hearing as to why Claimant was discharged or that Claimant *could have* been discharged for actions other than filing the criminal charges on June 2, 2010.

In the few cases where we have permitted an employer to assert reasons other than those given for an employee's separation to contest eligibility for benefits, those reasons were based, *inter alia,* on after-discovered evidence of criminal conduct that, in and of itself, would have supported the discharge. In *Preservation Pennsylvania v. Unemployment Compensation Board of Review,* 673 A.2d 1044 (Pa.Cmwlth.1996), this Court stated that there is a narrow exception to the rule "that the burden is on an employer to prove an employee's willful misconduct and that it was the actual reason for the employee's termination from employment." *Id.* at 1047–48. We held, in *Preservation Pennsylvania,* that the claimant, who was otherwise eligible for benefits based on the stated reason for her separation from employment, was ineligible because she embezzled funds from her employer, which was not discovered until after she had been separated from her employment due to the employer's budgetary problems. *Id.* at 1048. We stated that "the Board is not deprived of authority to permit evidence of the after-discovered criminal conduct [and t]he Board may thereafter reconsider the employee's entitlement to benefits in light of the after-discovered criminal conduct and terminate benefits if the employer sustains its burden of proof." *Id.* Similarly, in *Prime-*

*Pay, LLC v. Unemployment Compensation Board of Review,* 962 A.2d 684, 688 (Pa.Cmwlth.2008), we held that an employer can meet its burden to disqualify an employee from receiving benefits if it proves, by after-discovered evidence, that the employee's willful misconduct was concealed and, had the employer been aware of the conduct, the employer would have discharged the employee.

Here, unlike *Preservation Pennsylvania* and *PrimePay, LLC,* there was no after-discovered evidence of willful misconduct and there was no concealment of the alleged willful misconduct, i.e., how Claimant handled the incident with Student. The Board's finding of willful misconduct, through Claimant's violation of Employer's procedures, is not based on information discovered *after* Claimant's discharge. Rather, this conduct was contemporaneous to his filing of criminal charges against Student, which was the reason Employer fired Claimant.

The Board cites *Corbacio* and *Kelly* as support for its position. However, both are distinguishable. In *Corbacio,* the claimant was discharged from his job as a delivery driver because he had lost his driver's license, which he was required to maintain for his position, due to several off-the-job speeding violations. *Corbacio,* 466 A.2d at 1118. The claimant initially was found ineligible for benefits under Section 402(e) of the Law but, on appeal, the referee found the claimant ineligible under Section 3 of the Law, 43 P.S. § 752.[9] *Corbacio,* 466 A.2d at 1118. On appeal to this Court, the claimant objected to the referee's determination because it was based on Section 3 and not Section 402(e). *Id.* We rejected the claimant's argument and found no prejudice to the claimant, noting that "[t]he claimant was aware at all times of the factual basis on which his eligibility turned, for the relevant inquiry was always whether or not the claimant did in fact lose his operator's license and whether or not possession of that license was a valid condition of employment." *Id.* at 1119.

In *Kelly,* the claimant was discharged for insubordination after shouting, in front of her co-workers and her employer's patients, that she was against something that her employer was doing. *Kelly,* slip op. at 3. The referee found that the claimant's actions were not insubordinate, but were a disregard of the standards that the employer had the right to expect and, therefore, constituted disqualifying willful misconduct under Section 402(e). *Id.* at 5. The Board affirmed and, on appeal to this Court, the claimant argued that it was erroneous for the Board to assign a different basis for her willful misconduct than the one raised by the employer. *Id.* at 6. Relying on *Corbacio,* we affirmed the Board's determination of ineligibility reasoning that the claimant was aware that the question was whether she was ineligible for benefits under Section 402(e) and that "[t]he central factual question was whether [the c]laimant spoke critically of the office in a loud voice in front of patients, and the [r]eferee found that she did." *Id.* at 7. We concluded that, because the claimant was aware of these factors, she was not prejudiced by the Board's determination and there was no error in altering the description of her misconduct

---

9. Section 3 provides, in relevant part:

    The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own.*

    43 P.S. § 752 (emphasis added).

from insubordination to conduct that fell below the standard her employer had the right to expect. *Id.* at 7–8.

Unlike *Corbacio* and *Kelly,* the Board here altered the factual basis on which Claimant's eligibility was determined. Up until the hearing before Referee, Claimant's eligibility for unemployment compensation benefits turned on whether his filing criminal charges against Student constituted willful misconduct as this was the reason given by Employer for Claimant's discharge. Because of this change, "the relevant inquiry [here] was [not] always whether or not" Claimant violated Employer's policies in handling the incident with Student. *Corbacio,* 466 A.2d at 1119. Moreover, this is not, as it was in *Corbacio* and *Kelly,* merely an alteration of the description of the misconduct involved; rather, the Board made its determination regarding Claimant's ineligibility on a factual basis different than the factu-

al basis given by Employer for Claimant's discharge. Thus, we conclude that *Corbacio* and *Kelly* are distinguishable and do not require that we affirm the Board's determination.

For the foregoing reasons, we reverse the Board's Order.[10]

Senior Judge FRIEDMAN concurs in the result only.

### ORDER

**NOW,** January 27, 2012, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby **REVERSED.**

---

**10.** Because of our resolution of this issue, we do not reach Claimant's other assertions of error.