# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The Community Youth and Women's Alliance, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 77 C.D. 2020 |
| | : | Submitted: November 12, 2020 |
| Unemployment Compensation Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
            HONORABLE ELLEN CEISLER, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                         **FILED:  December 11, 2020**


Petitioner The Community Youth & Women's Alliance (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board).  The Board affirmed a decision of the Unemployment Compensation Referee (Referee), granting Miriam E. Wealer (Claimant)[1] unemployment compensation benefits.  For the reasons set forth below, we vacate the Board's decision and remand this case to the Board for further proceedings consistent with this opinion.

---

[1] By order dated August 14, 2020, this Court granted Claimant's application to intervene in this matter.

Claimant applied for unemployment compensation benefits on July 10, 2019, after separating from her position as Executive Director with Employer. (Certified Record (C.R.), Item No. 2 at 1-2.) The Altoona UC Service Center (Service Center) determined that Claimant was ineligible for unemployment compensation benefits for the week ending on July 13, 2019. (C.R., Item No. 6.) Claimant filed a timely appeal of the Service Center's determination, and a Referee conducted a hearing. (C.R., Item Nos. 7, 10.) At the hearing, Employer presented the testimony of Melissa Lopez (Lopez), an employee of Employer, and Reverend Sherry Deets (Deets), a member of Employer's board of directors. Claimant testified on her own behalf.

Lopez testified that she worked as an Office Assistant with Employer since August 4, 2017. (Reproduced Record (R.R.) at 12.) Her primary duty was assisting Claimant with everyday tasks, including answering the phone, typing letters and grants, and reading Claimant's emails. (*Id*. at 12-14, 27.) Lopez testified that, as Executive Director, Claimant was the primary finance person in charge of maintaining services and signing the checks for such services in amounts under $5,000.[2] (*Id*. at 14-16, 18.) Lopez stated that she learned on May 9, 2019, that Employer's insurance policy had been cancelled as of May 6, 2019, due to nonpayment of the insurance premium. (*Id*. at 16, 21.) When Lopez told Claimant about the lapse of insurance, Claimant stated that she wanted to keep the issue on the "down low," but that she would speak to members of Employer's board of directors to have the insurance reinstated. (*Id*. at 16.) Lopez further testified that, in February or March 2019, Employer's trash service through Waste Management

---

[2] Amounts exceeding $5,000 required the additional signature of one of two board members assigned to the responsibility. (R.R. at 15.)

was cancelled also due to nonpayment. (*Id*. at 18.) It was Lopez's understanding that Claimant was responsible for maintaining both the insurance policy and trash service for Employer. (*Id*. at 16, 18.) Claimant went on medical leave in February 2019, and Lopez recalled that Claimant returned full-time in the middle of March 2019. (*Id*. at 26-27.) While it is unclear from Lopez's testimony exactly when Claimant learned of the issues regarding nonpayment of the insurance and trash service, Lopez testified that Claimant was or should have been aware of both issues prior to the services being cancelled, *i.e.*, between February and April 2019. (*Id.* at 27-32.) Lopez testified that, after Employer discharged Claimant, the board of directors informed Lopez and other staff members that Employer terminated Claimant's employment due to mismanagement, but they were not given specific details. (*Id.* at 21.)

Employer's second witness, Deets, testified that she had served as Secretary on Employer's board of directors since the summer of 2017. (R.R. at 35.) Deets learned of the lapse of insurance at Employer's board meeting on June 19, 2019, and she discovered the trash service cancellation after a neighbor filed a complaint in early May. (*Id*. at 38-40, 49-50.) After reviewing the trash service fees, Deets was alarmed by the significant amount Employer was paying. (*Id.* at 40.) Deets also testified that loans had been taken out on the properties owned by Employer, which was confusing to her, because the grants Employer received from the government were typically sufficient to cover all of Employer's operating costs. (*Id*. at 36-37.) Deets stated that Claimant oversaw essentially all of Employer's operations, including managing service contracts and obtaining grants and loans, and Claimant, therefore, would have been responsible for the management of these items of business. (*Id.* at 36, 39, 41.) During the time Claimant was on medical leave,

3

however, the board did not appoint an acting Executive Director to take on these tasks. (*Id.* at 45.) Moreover, Deets stated that the reason for nonpayment of the insurance policy and trash fees, particularly during the period of Claimant's medical leave—*i.e.*, February through April of 2019—was because Employer did not have the funds to pay the bills. (*Id.* at 47-48.) Neither Deets, nor any member of the board of directors, discussed the lack of funds with Claimant. (*Id.* at 48.)

Deets testified that, at the end of the June 19, 2019 board meeting, the board of directors unanimously voted to terminate Claimant's employment. (R.R. at 42-43.) Concerning the reason for Claimant's termination, Deets stated:

> It was a combination of things. But again, the precipitating issue was . . . the non-payment of insurance, the fact that for some reason we were paying outrageous trash fees. Actually, the loans were a factor in this. We felt that waiting for a retirement at the end of the year would— we wouldn't have any money left. We would have to close our doors if we did not move to, to enter [sic] employment.

(*Id.* at 43.) Employer discharged Claimant on June 24, 2019, one week after the June 19, 2019 board meeting. (*Id.* at 43-44.) Employer did not give an official reason for discharge at the time of Claimant's termination. (*Id.* at 44.) Neither Deets nor anyone from the board of directors discussed the insurance issue or lack of funds with Claimant prior to her termination. (*Id.* at 48, 54.)

Claimant testified that Employer terminated her employment on June 24, 2019, and, despite her requests for a reason for her discharge, Employer did not give one. (R.R. at 83.) Prior to her termination, Claimant was unaware even that her job was in jeopardy. (*Id.*) Claimant testified that Employer typically adheres to what she referred to as a "three-strikes" policy for discharge, and, therefore, she expected that she would have received some kind of warning prior to her discharge. (*Id.*) Claimant was on medical leave beginning in February of 2019, and her doctor

4

did not release her for full-time work until April 26, 2019. (*Id.* at 84-85, 90.) During this two-and-a-half-month time period, Claimant stated that, apart from occasionally checking her email, she did not conduct any work at all. (*Id.* at 91.) Claimant was barely walking and, therefore, physically unable to work. (*Id.*) Claimant did not attend the February, March, or April board meetings. (*Id.* at 89.) Although Claimant was aware that no interim was appointed during her leave, she assumed that most of Employer's major operations were being handled by the other full-time employees, noting that Employer's bookkeeper, Kathy Ferguson (Ferguson), had been employed there for fifteen years and handled the finances with Claimant. (*Id.* at 86.) Claimant testified that the board of directors typically stepped in to make any interim appointments, and she, therefore, did not have a conversation with the board about a replacement. (*Id.* at 93.) Claimant was also aware that Lopez's sister was the president of the board of directors, and she thought Lopez would have consulted with her sister if she had any concerns while Claimant was on leave.[3] (*Id.* at 86.) When Claimant learned that the insurance had lapsed in early May, she immediately called Employer's contact at the insurance company, who was not helpful or able to get the policy reinstated. (*Id.* at 92.) Claimant thereafter put out bids, calling three or four different companies to bid on the job. (*Id.* at 97.)

During Claimant's testimony, counsel for Employer attempted to introduce certain emails that Claimant received or was copied on during or around her medical leave, but the Referee excluded the evidence and disallowed the line of questioning. (R.R. at 94.) The Referee explained: "Well we are wasting everyone's time, because your witness testified that, and this witness testified that there was no reason given

_____

[3] Claimant noted that when she told Lopez in early May to keep the insurance issue on the "down low," she was attempting to protect Lopez and Ferguson from getting terminated. (R.R. at 86-87.) Claimant believed that it was a "fireable" offense for them, not for herself. (*Id.*)

5

to the Claimant at the time of separation.  So, all of this [is] irrelevant.  You did not tell her she was being discharged for financial mismanagement." (*Id.*)  During later questioning concerning Claimant's alleged mismanagement, the Referee again disallowed a line of questioning by counsel for Employer:

> [Employer Lawyer]:  So it's your testimony that [in] May the board was aware that the insurance [had lapsed] . . . .
>
> [Client Lawyer]:  Objection.
>
> [Referee]:  Basis?
>
> [Client Lawyer]:  Well it[']s argumentative.
>
> [Referee]:  I'm going to sustain but on a different ground.  She wasn't, again, she was not told she was discharged because insurance—she allowed the insurance to lapse or her staff allowed the insurance to lapse.  So, let's move on . . . .
>
> [Employer Lawyer]:  Did the [board of directors] ever discuss with you their concerns about the condition of the properties owned by [Employer]?
>
> [Claimant]: Yes. . . .
>
> [Employer Lawyer]:  What did those conversations entail?
>
> [Claimant Lawyer]:  Objection . . . .
>
> [Referee]:  I'm going to sustain.  Again, she wasn't given a reason [for her termination].

(*Id.* at 97-98.)

On rebuttal, Deets testified that the board of directors had multiple conversations with Claimant in the past about Claimant's handling of the finances and, therefore, thought Claimant knew why her employment was being terminated.  (R.R. at 99-100.)  Claimant did not say anything to the board of directors at the termination meeting, but Claimant afterward asked Deets personally why she was fired, to which Deets did not give an answer.  (*Id*. at 100.)

Following the hearing, the Referee issued a decision, concluding that Employer did not present sufficient evidence to establish that Claimant's termination was for reasons which rise to the level of willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law).[4] (R.R. at 120.) The Referee, therefore, determined that Claimant was eligible for unemployment compensation benefits. (*Id.* at 121.) The Referee made the following findings of fact:

1.   The Claimant worked full-time as the Executive Director, for approximately 30 years, until her last day worked on June 24, 2019 . . . .

2.   The Claimant was out of work, due to a medical condition, beginning on or about February 4, 2019, until on or about April 26, 2019.

3.   On or about April 26, 2019, the Claimant's physician released her to return to work full[-]duty.

4.   In May 2019, the Claimant discovered that the property insurance lapsed.

5.   The Claimant contacted the current agent about renewing the policy.

6.   The Claimant also "put out bids" to renew the policy.

7.   On June 21, 2019, the Claimant attended a meeting for the Board of Directors.

8.   On June 24, 2019, the Employer discharged the Claimant.

9.   The Employer did not provide the Claimant with a reason she was being discharged during the meeting, but did provide the Claimant with a separation agreement for her review, in which she would receive one month's salary.

10.   Prior to her discharge, the Employer did not issue the Claimant any warnings.

(*Id.* at 119-20.) The Referee reasoned:

---

[4] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

7

In the present case, the Employer discharged the Claimant. The Employer did not provide a reason to the Claimant for her discharge during the discharge meeting. The testimony of the Board Secretary/Treasurer, and the Claimant, indicated the Employer did not provide any reason to the Claimant, during the discharge meeting for her termination. The Employer provided the Claimant with a separation agreement, where the Claimant would receive one month's salary, at the time of discharge for her to review. The Employer did not inform the Claimant that she was being discharged because of the lapse of insurance on the property, the cost of the waste management services, or the financial condition of the organization.

As such, while the Referee in no way questions the Employer's right to discharge the Claimant from employment, the Referee cannot conclude that the Employer has presented sufficient, competent evidence to meet its burden of proof in establishing the Claimant's discharge from employment was for reasons which rise to the level of willful misconduct in connection with the work. Accordingly, there can be no denial of benefits under Section 402(e) of the Law.

(*Id.* at 120.)

Employer appealed the Referee's decision to the Board. (C.R., Item No. 13.) The Board affirmed the decision of the Referee, adopting and incorporating the Referee's findings of fact and conclusions of law. The Board reasoned, in relevant part:

Moreover, the Board resolves the conflicts in the testimony, in relevant part, in favor of the claimant and finds her testimony to be credible. In this matter, the employer did not meet its burden to prove that it discharged the claimant for willful misconduct under Section 402(e) of the Law. At the hearing, the employer's witnesses testified that it discharged the claimant for mismanagement, but the parties agree that the employer did not give the claimant a reason for her discharge. Further, the claimant testified that prior to her discharge, the employer did not warn her that her performance was unsatisfactory.

(R.R. at 124-125.) Employer now petitions this Court for review.

8

On appeal,[5] Employer argues: (1) the Board erred in affirming the Referee's decision to exclude evidence relevant to the question of Claimant's misconduct; (2) the Board arbitrarily and capriciously disregarded relevant evidence; and (3) the Board erred in concluding that Claimant's actions did not constitute willful misconduct. As to the issue of willful misconduct, Employer contends, in part, that the Board misapprehended the law when it held that an employer cannot establish willful misconduct if the employer did not provide the claimant with a reason for the discharge at the time of termination. Whether the Board applied the correct legal standard may affect this Court's analysis of all of the issues raised by Employer. For that reason, we will first examine whether the Board misapprehended the law.

Under Section 402(e) of the Law, any employee who is discharged or temporarily suspended for willful misconduct is ineligible for unemployment compensation benefits. It is well-established that "[w]hether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Brown v. Unemployment Comp. Bd. of Rev.*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). An employer bears the burden to prove that it discharged an employee for willful misconduct. *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). The term "willful misconduct" is not defined by statute. The courts have defined "willful misconduct" as follows: "(1) wanton or willful disregard for an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interests or

---

[5] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

an employee's duties and obligations." *Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422, 425 (Pa. 2003) (quoting *Navickas v. Unemployment Comp. Bd. of Rev.*, 787 A.2d 284, 288 (Pa. 2001)). In the event a court finds that a claimant's actions constitute willful misconduct, a claimant can still receive benefits if she can show that she had good cause for her willful misconduct. *Walsh v. Unemployment Comp. Bd. of Rev.*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). In determining whether an employer has discharged an employee for willful misconduct, we have held that an employer is prohibited from offering one reason for discharge at the time of separation and then later relying on a completely different reason. *See Saleem v. Unemployment Comp. Bd. of Rev.*, 35 A.3d 1283, 1290-93 (Pa. Cmwlth. 2012); *Browning-Ferris Indus. of Pa., Inc. v. Unemployment Comp. Bd. of Rev.*, 561 A.2d 856, 857 (Pa. Cmwlth. 1989).

Here, Employer did not give Claimant a reason for termination at the time of discharge. In response to Claimant having filed for unemployment compensation benefits, Employer completed a questionnaire that it submitted to the Service Center, in which it identified "mismanagement" as the reason for Claimant's discharge. Employer attached a one-page addendum to the questionnaire, explaining Employer's reasons for terminating Claimant's employment. (C.R., Item No. 4.) Those reasons included excessive trash fees, the lapse of insurance, lack of financial disclosure to the board of directors, and other general financial mismanagement. Employer asserted those same reasons for termination during the hearing before the Referee, but the Referee limited questioning and excluded Employer's evidence because Employer did not give Claimant a reason for termination at the time of her discharge. (R.R. at 42-43, 94, 97-98.) In affirming the Referee's decision, the Board appeared to take the Referee's position that, if a reason for discharge is

10

not given at the time of termination, an employer is later barred from establishing a reason sufficient to meet its burden of proof under Section 402(e) of the Law. (R.R. at 120, 124-125.)

Employer now contends that the Board essentially interpreted the law to hold that, in the absence of a stated reason for discharge at the time of termination, an employer cannot present evidence of willful misconduct and, therefore, cannot establish that a claimant engaged in willful misconduct. The Board, in its brief, does not dispute this position. Rather, the Board cites *Saleem* and *Browning-Ferris* for the proposition that, because Employer did not give Claimant a reason for discharge at termination and, instead, established the reasons in its employer questionnaire, Employer did not offer consistent reasons for Claimant's discharge, such that the actual reason cannot be ascertained. (*See* Board's Brief at 9.) The Board conflates two dissimilar concepts. Per the Board's interpretation, an employer providing no reason at the time of discharge but raising one later is the same as an employer giving one reason at the time of discharge and later changing it to a completely different reason. We disagree that these concepts are one and the same, and our precedent holds only that employers are prohibited from switching to a different reason for termination than the one it provided at discharge. Our precedent does not constrain an employer that fails to provide a reason at discharge from later establishing one. In the matter before us, Employer has alleged the same reasons for Claimant's discharge at all times since it completed the employer questionnaire: general financial mismanagement, lapse of insurance, excessive trash fees, and lack of financial disclosure to the board of directors. (C.R., Item No. 4; *see* C.R., Item No. 13 at 5; Pet. Br. at 15-18.) Employer's failure to provide these reasons to

11

Claimant at the time of discharge does not prevent Employer from later establishing them in order to meet its burden of proof under Section 402(e) of the Law.

Turning to the issue of the Referee's exclusion of evidence, it is clear that the exclusion came as a result of the Referee's misapprehension of the law, and, therefore, it was error. This was, unfortunately, not a harmless error. The Referee excluded evidence central to the question of whether Claimant was aware of certain financial issues at critical times during her employment. (*See, e.g.*, R.R. at 97-98.) As a result, the Referee improperly precluded Employer from adducing facts that it believed would form the basis for establishing that Claimant engaged in willful misconduct. Thus, a remand for a new hearing is required.

Accordingly, we vacate the Board's decision and remand to the Board with instruction that it remand the matter to the Referee for a new hearing and the issuance of a new decision.

P. KEVIN BROBSON, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Community Youth and Women's :
Alliance, :
      Petitioner :
        :
    v.    : No. 77 C.D. 2020
        :
Unemployment Compensation :
Board of Review, :
      Respondent :

## O R D E R

AND NOW, this 11th day of December, 2020, the order of the Unemployment Compensation Board of Review (Board) is VACATED, and the matter is REMANDED to the Board for further proceedings consistent with the attached Opinion.

Jurisdiction relinquished.

          _____
          P. KEVIN BROBSON, Judge