Barry J. Brode, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Carmen A. Guido, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Edward C. Finlan, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Paul T. Keich, Sr., Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Earl L. Klein, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Charles P. Myers, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Charles E. Roeder, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Joseph A. Romano, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 16, 1983, before Judges WILLIAMS, JR., CRAIG and MACPHAIL, sitting as a panel of three.

*Joseph P. Semasek,* for petitioners.

*Richard F. Faux,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, January 19, 1984:

In these eight consolidated unemployment cases, petitioners[1] appeal from the orders of the Unemployment Compensation Board of Review affirming the decisions of the referee who denied unemployment benefits to all claimants.

---

[1] Barry J. Brode, Carmen A. Guido, Edward C. Finlan, Paul T. Keich, Earl L. Klein, Charles P. Myers, Charles E. Roeder, Joseph A. Romano.

We must determine whether there is substantial evidence[2] to support the board's findings and conclusion that the claimants knowingly accepted payment for time not worked and were therefore properly suspended for willful misconduct, making them ineligible to collect benefits under the Unemployment Compensation Law.[3]

The board made substantially the same findings in all eight cases, as follows:

1. For the purposes of this appeal, the claimant was last employed by the Atlas Powder Co. as a magazine helper for approximately fifteen years at a final rate of $7.29 per hour and his last day of work was September 1, 1981.

2. On September 1, 1981, the claimant was suspended from work for thirty working days because he knowingly accepted payment for overtime hours which he had not worked during the pay period from August 3, 1981 through August 14, 1981.

3. At that time, the claimant was informed by his supervisor that an extra effort to increase productivity was needed and that he, the supervisor, would "take care" of him for his extra effort.

4. When the claimant received his paycheck for that period, he realized that he had been paid for hours not worked, but he cashed the check without notifying the employer of the overpayment.

---

[2] *H & A. Sales Co. v. Unemployment Compensation Board of Review*, 63 Pa. Commonwealth Ct. 304, 437 A.2d 1296 (1981).

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751-914. The employer has the burden of proving that the employee's conduct amounted to willful misconduct within the meaning of section 402(e) of the Act, 43 P.S. §802(e).

The employer, Atlas Powder Company had a regulation, Plant Rule No. 5, which required the discharge of an employee who is guilty of theft from the company or falsification of time records. Here the employees did not personally falsify their time records; their supervisor was responsible for recording the amount of time to be charged to the company on each employee's time card. However, the testimony of the employees establishes that they knew their paychecks included compensation for overtime in excess of that actually worked, that they knew Atlas Powder had no policy for such overpayment, and that they nevertheless cashed their checks without mentioning the irregularity to anyone in management.

Although not strictly guilty of falsification of records, the employees' knowing acceptance of overpayment rendered them participants in the scheme, and possibly guilty of theft in violation of Plant Rule No. 5. Aside from any specific company rule, however, the employees' conduct amounted to a "substantial disregard for the employer's interests [and] the employee['s] duties and obligations," and therefore constituted willful misconduct. *See General Electric Co. v. Unemployment Compensation Board of Review,* 49 Pa. Commonwealth Ct. 469, 411 A.2d 578 (1980), (employee's failure to properly punch time clock at lunch hour resulting in overpayment for six minutes time not actually worked held to be willful misconduct).

The employees seek to justify[4] their misconduct by asserting that they believed the inflated compensation to be proper because the supervisor had told them that

---

[4] Once the employer has met the burden of proving violation of a company rule, the employee has the burden to prove that his failure to comply with the rule was justifiable and reasonable under the circumstances. *Colonial Beef Co. v. Unemployment Compensation Board of Review,* 68 Pa. Commonwealth Ct. 627, 450 A.2d 256 (1982).

he would ''take care'' of them, suggesting that he had authority to provide the extra compensation. However, an employee's action upon a mistaken belief of legal entitlement is not a justification for violation of an employer's rule. *See Simpson v. Unemployment Compensation Board of Review,* 69 Pa. Commonwealth Ct. 120, 450 A.2d 305 (1982) (employee's belief that he had legal right to refuse lunch bucket search held not to vitiate requisite state of mind in willful misconduct case). Therefore, the employees' argument falls short of establishing good cause for their misconduct. *Albertson v. Unemployment Compensation Board of Review,* 69 Pa. Commonwealth Ct. 394, 452 A.2d 275 (1982).

We conclude that there is substantial evidence to support the board's findings and conclusion that the employees' knowing acceptance of payment for overtime not worked constituted willful misconduct, rendering them ineligible for unemployment compensation benefits.

Accordingly, we affirm the orders of the board.

ORDER IN 177 C.D. 1982

Now, January 19, 1984, the order of the Unemployment Compensation Board of Review, dated December 30, 1981, No. B-202255 is affirmed.

ORDER IN 178 C.D. 1982

Now, January 19, 1984, the order of the Unemployment Compensation Board of Review, dated December 30, 1981, No. B-202253 is affirmed.

ORDER IN 179 C.D. 1982

Now, January 19, 1984, the order of the Unemployment Compensation Board of Review, dated December 30, 1981, No. B-202258 is affirmed.

## ORDER IN 180 C.D. 1982

Now, January 19, 1984, the order of the Unemployment Compensation Board of Review, dated December 30, 1981, No. 202257 is affirmed.

## ORDER IN 181 C.D. 1982

Now, January 19, 1984, the order of the Unemployment Compensation Board of Review, dated December 30, 1981, No. B-202254 is affirmed.

## ORDER IN 182 C.D. 1982

Now, January 19, 1984, the order of the Unemployment Compensation Board of Review, dated December 30, 1981, No. B-202260 is affirmed.

## ORDER IN 183 C.D. 1982

Now, January 19, 1984, the order of the Unemployment Compensation Board of Review, dated December 30, 1981, No. B-202259 is affirmed.

## ORDER IN 184 C.D. 1982

Now, January 19, 1984, the order of the Unemployment Compensation Board of Review, dated December 30, 1981, No. B-202256 is affirmed.