578 A.2d 606

**William MOORE, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 23, 1990.

Decided July 27, 1990.

---

**3.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1—1031.

Stephen B. Cooper, Pottstown, for petitioner.

Maribeth Wilt–Seibert, Asst. Counsel, with her, Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before DOYLE and COLINS, JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge:

William Moore, the petitioner, appeals an order of the Unemployment Compensation Board of Review (Board) which affirmed a decision of the referee denying petitioner benefits on the basis of Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e) (willful misconduct).

Petitioner was employed by ASTA Engineering Co., Inc. (the employer) doing design work. The employer was doing work for Philadelphia Electric Company (PECO) on PECO's nuclear power plants. The employer, at the request of PECO, asked petitioner to submit to a random drug test. When the petitioner refused, he was discharged.

The petitioner applied for unemployment compensation benefits. In response to a request for information by the Office of Employment Security (OES) concerning the separation, a representative wrote that petitioner was terminated because "[the employer's] contractual relationship with the Philadelphia Electric Company requires that employees performing work for PECO submit to random drug testing." (Item No. 2 of the original record, Employer's Separation Information.) The employer further responded that there was a company policy regarding drug testing. *Id.*

As a part of that response, the employer attached a copy of its drug and alcohol policy, which provided:

The following conduct is prohibited of any AEI employee:

1. Sale or distribution of drugs, without regard to whether the sale or distribution takes place on or off AEI or Client premises and whether on or off duty.

2. Use, possession, concealment or purchase of drugs while on AEI premises or while on Client premises. On duty includes break and meal periods in addition to actual working time. Premises include parking lots and vehicles, and all other areas where AEI or Client performs work, whether or not owned or leased by AEI or Client.

3. Use, possession, concealment or purchase of alcohol while on AEI or Client premises or during working time for AEI or Client. Working time includes all time for which the employee is paid.

4. Off-duty and off-premises involvement with drugs, which has or may have an adverse impact on AEI or Client. Such conduct has or may have an adverse impact on AEI or its Clients, where, for example, it has or may have an effect on the employee's ability to perform his or her duties, may endanger the safety of employees or the public, may damage AEI's or the Client's reputation for providing safe and dependable service, or may undermine the public's or government's confidence in AEI or our Clients.

5. Observable impairment by drugs and/or having an impermissible level of drugs in one's system while on duty at AEI or Client; or on AEI or Client premises.

6. Conduct or behavior evidencing an inability to perform work safely or efficiently due to alcohol, or performance that is otherwise influenced by alcohol, during working time at AEI or the Client or while on AEI or Client's premises.

Any employee of AEI who violates the prohibitions set forth above, or who, in connection with a drug test, provides a false or tampered sample or who refuses or

fails to provide a sample altogether is subject to immediate dismissal.

*Id.* Based upon this information, the OES denied benefits.

The petitioner appealed the denial of benefits. At a hearing before a referee, which the employer failed to attend, all OES documents, including the above quoted policy of the employer, were admitted without objection. The petitioner, who was not represented by counsel but was willing to proceed without an attorney, testified on his own behalf. He testified that when the employer began performing work for PECO, he was asked to sign a form consenting to random drug testing. That consent form, introduced as his exhibit A, provided:

> I agree as a condition of my engaging in PECO-related work *which involves unescorted access to PECO's nuclear facilities I will:*
>
> 1. Submit to a medical examination prior to being granted unescorted access and each year on an annual basis thereafter.
>
> 2. Submit to Minnesota Multiphasic Personality Inventory testing (MMPI) prior to being granted unescorted access.
>
> 3. Undergo drug testing in accordance with PECO's Drug Testing Policy, which includes unannounced testing.
>
> I understand that the results of the above examinations and tests will be released to PECO's Medical Review Officer or his designee, anyone else with a need-to-know or as-required by law.
>
> I understand that if I refuse to consent to the above examinations and/or tests, or if I am not evaluated satisfactorily, that I will be denied access to PECO's premises and precluded from doing subsequent PECO-related work.

(Petitioner's exhibit A, admitted at hearing before the referee, 9/5/89, N.T. p. 5). The petitioner testified that he refused to sign the consent form because he neither had nor needed unescorted access to PECO's nuclear facilities as a part of his job. Despite refusing to sign the consent form,

petitioner continued to perform his job for the employer on PECO's contract. He also testified that he was never given a copy of the employer's drug policy until a fellow employee gave it to him after he had been discharged (N.T. p. 5). He also testified that to his knowledge, the employer itself never requested any of its employees to submit to random drug testing. *Id.* He also testified that his employer informed him that he would be fired if he persisted in his refusal to take the test.

The referee denied benefits, based on the following factual findings:

2. Claimant's employer had an established policy involving drugs and alcohol usage, which incorporated the requirement of providing 'samples' for drug and alcohol testing and that the refusal to supply a sample was grounds for immediate dismissal.

3. Claimant, pursuant to the above policy, and *at the request of the client* who was involved in Nuclear Power Plant work was instructed to supply a sample (urine) for a drug and alcohol test, which the claimant refused.

4. As a result of the above, the claimant was dismissed.

5. Claimant alleges that he should not have been required to supply the above sample in that he did not have a badge of unescorted access to a Nuclear Power Plant.

(Referee's decision, 9/11/89). The referee went on to state in his decision:

[T]he claimant was engaged in activity concerning Nuclear Power Plants and the overriding public policy concerning safety, accuracy of work, etc., must dictate that the claimant's work is of such a nature as to require his submission to such testing or, in the alternative, a separation from employment, as provided by the policy referred to in the finding of fact above. The claimant refused to take the test and his position concerning unaccompanied access is insufficient to remove him from the employer's policy as dictated by the overriding public policy.

*Id.* The board affirmed on the basis of the referee's decision and this appeal followed.

██ Our scope of review is limited to determining whether one's constitutional rights have been violated, an error of law was committed and that all necessary findings of fact are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986). Furthermore, the burden of proving willful misconduct is on the employer. *Brode v. Unemployment Compensation Board of Review,* 79 Pa. Commonwealth Ct. 630, 470 A.2d 200 (1984). The violation of an established policy of the employer can, in and of itself, constitute willful misconduct. *Tongel v. Unemployment Compensation Board of Review,* 93 Pa.Commonwealth Ct. 524, 501 A.2d 716 (1985). To prove willful misconduct by showing such violation of the policy, the employer must prove both the existence of the policy and the violation thereof by the employee. *Id.*

The petitioner here makes essentially one argument. He argues that the employer failed to prove the existence of the policy. While he recognizes that the policy was included in the documents of OES admitted at the hearing, he argues that those documents are hearsay and incapable of supporting the factual finding concerning the existence of the policy. We do not agree.

██ As previously stated, the employer failed to appear at the hearing to attempt to meet its burden of establishing willful misconduct. Even where an employer fails to appear having the burden of proving willful misconduct, benefits may be denied if the employee seeking benefits proves the employer's case. *Devlin v. Unemployment Compensation Board of Review,* 71 Pa.Commonwealth Ct. 417, 454 A.2d 1189 (1983). We stated in *DiGiovanni v. Unemployment Compensation Board of Review,* 44 Pa. Commonwealth Ct. 605, 608, 404 A.2d 449, 450 (1979) that the employee can sustain the employer's burden "either in whole ... or in part, by corroborating unobjected to hearsay evidence of the employer...." (Citations omitted.) In this case, an OES document was admitted into evidence whereby the employer informed OES that a policy existed

and attached a copy of a statement of the policy. This document, establishing the existence of the employer's policy, was not objected to by the petitioner. We must, therefore, determine whether the petitioner either established the existence of the policy by his own testimony or provided sufficient corroboration to allow the hearsay evidence to constitute substantial evidence, capable of supporting the referee's second factual finding. We believe that the petitioner's testimony provided the necessary corroboration.

As already mentioned, the petitioner testified that after he initially refused to take the test, he was told by his superiors that he would be discharged if he didn't submit to the testing. Although petitioner's testimony did not make clear whether the employer was referring to its own policy, or that of PECO's, we are of the view that said testimony was sufficient to corroborate the OES document, especially since petitioner did not object to its admission at the hearing. We therefore believe that substantial evidence existed to prove that the employer had a drug testing policy which provided for immediate dismissal upon refusal to submit to a test. The petitioner further admitted that he refused to take the test. Therefore, we believe that the referee's findings are supported by substantial evidence and that those findings support the legal conclusion that petitioner had engaged in willful misconduct, thereby disqualifying him from obtaining benefits.[1]

## ORDER

NOW, July 27, 1990, the order of the Unemployment Compensation Board of Review, dated December 11, 1989, at No. B–277847, is affirmed.

1. At the hearing before the referee, the petitioner's testimony was that he did not have unescorted access to PECO's facilities, thereby giving him good cause for failing to comply with the request to take the drug test. In the present appeal, petitioner's argument makes no mention of his proferred good cause for refusing to take the test. This issue having been abandoned, we need not discuss it.