David REBEL, Petitioner,

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1996.

Decided April 7, 1997.

John A. Lee, James A. Moore, Pittsburgh, for petitioner.

Jessica L. Lynch, Pittsburgh, for respondent.

Before SMITH and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

David Rebel (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) that affirmed a referee's decision determining that he was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] In general, Claimant questions whether the Board erred in determining that his refusal to submit to random drug testing in compliance with the policy of Duquesne Light Company (Employer) was without good cause, and whether the Board erred in determining that his refusal constituted willful misconduct, where Employer assertedly treated Claimant more severely than Employer's disciplinary guidelines dictated and improperly applied different standards of conduct to different employees.

Claimant worked for Employer as an electrical engineer until May 11, 1995. His duties included work involving the Beaver Valley Power Station, a nuclear power plant. All of Employer's employees are subject to random urinalysis testing under its drug testing program. The purpose of the program is to maintain a drugfree work place, and Claimant was fully aware of the drug testing policy. A supervisor explained the policy to all employees and indicated that they would be subject to disciplinary action for refusing to comply with the drug testing policy. On May 10, 1995, Claimant's supervisor informed him that he was selected for drug testing; he was told where to report and was given a handout which stated that if an employee had any questions or problems, the employee was to feel free to discuss them with a supervisor.

Claimant did not inform his supervisor of any problems or questions that he had about the drug testing. The next day, Claimant's supervisor asked Claimant if he had gone for testing; Claimant stated that he had no intention of going and that he did not believe in the program. The supervisor informed Claimant that his actions were very serious and that Corporate Security and Human Resources would have to be notified. Thereafter, Claimant was instructed to leave the site and was informed that he had been placed on non-pay status pending review of his case. On May 17, 1995, Claimant was discharged for poor job performance and for his refusal to comply with Employer's drug testing policy. He was informed of his discharge by letter, which stated: "Based on your failure to follow my instructions on May 10, 1995, as well as your work performance problems in 1994 and to date in 1995, it is the Company's decision to discharge you effective May 11, 1995." Referee's Ex. 3C.

The Job Center denied Claimant's application for benefits. The referee affirmed, inter alia, on the ground that Claimant did not have a valid reason for failing to take the drug test and was therefore ineligible under Section 402(e) of the Law. The Board affirmed the referee, determining that Em-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402 provides in part that "[a]n employe shall be ineligible for compensation for any week ...

(e) [i]n which his unemployment is due to his discharge ... for willful misconduct connected with his work...."

ployer's drug policy was reasonable and that although Claimant was given an opportunity to raise any questions or problems relating to the testing, he failed to do so. The Board found that Claimant's reasons did not amount to good cause for refusing to take the drug test.[2]

In *Spiropoulos v. Unemployment Compensation Board of Review,* 654 A.2d 642 (Pa.Cmwlth.1995), the Court stated that willful misconduct, although not defined by statute, may be established by proof of an employee's deliberate violation of the employer's rules. The employer bears the burden of showing willful misconduct for a violation of its rules, and the issue of whether a claimant's actions constitute willful misconduct is a question of law reviewable by this Court. In *Metropolitan Edison Co. v. Unemployment Compensation Board of Review,* 146 Pa.Cmwlth. 648, 606 A.2d 955 (1992), the Court recognized that where an employee is accused of willful misconduct for violating a work rule, the employer bears the burden of establishing the existence of the work rule, its reasonableness and the fact of its violation. The burden then shifts to the employee to establish good cause for the violation.

Claimant states that his good cause defense should be evaluated under the standards articulated by this Court in *Simpson v. Unemployment Compensation Board of Review,* 69 Pa.Cmwlth. 120, 450 A.2d 305 (1982), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 97 (1983). In that case, an employee was discharged for refusing to follow the employer's policy by opening his lunch bucket upon leaving the employer's premises so that the lunch bucket could be checked for stolen tools. This Court recognized that such searches by private parties do not involve state or federal constitutional concerns but rather involve a balancing of the employee's obligations to the employer with the employee's common law personal and property rights and held that the claimant's failure to allow the search based on his legal beliefs did not constitute good cause. If an employ-

er's request may be deemed reasonable, an employee has waived any common law right to privacy as a basis for noncompliance.

Claimant's supervisor testified that the purpose of Employer's random drug testing program was to maintain a drug-free work place. Claimant testified that he was aware of the reasoning behind Employer's policy, but he felt that a random drug test was an insult and an invasion of privacy and that he had to make a stand. In his brief, Claimant describes the burdens of random urinalysis, i.e., personal intrusions, dangers inherent in monitoring required of the collection process and personal disclosures required in the testing process. He further objects to Employer's drug testing of employees without their consent, as contrasted with those union employees who consented as a group to such testing under their collective bargaining agreement.

In *Moore v. Unemployment Compensation Board of Review,* 134 Pa.Cmwlth. 274, 578 A.2d 606 (1990), the claimant, employed with an engineering firm performing work for a major electric utility on its nuclear power plants, was discharged for refusing to submit to a random drug test. This Court affirmed the Board's decision to deny benefits, concluding that the overriding public policy concerning safety and accuracy of work in that setting required the claimant's submission to random drug testing. Additionally, in *Singleton v. Unemployment Compensation Board of Review,* 125 Pa.Cmwlth. 397, 558 A.2d 574 (1989), this Court, citing recent U.S. Supreme Court decisions that approved of drug testing without individualized suspicion for safety related concerns, noted that controlled substances can adversely affect an employee's job performance and that drug testing is a reasonable requirement of an employee to assist the employer in evaluating a person's ability to perform and to promote public safety.

The claimant in *Singleton* was employed as a bus driver for SEPTA and was discharged

---

**2.** This Court's scope of review is limited to determining whether the necessary findings are supported by substantial evidence and whether the Board committed an error of law or a constitu-

tional violation. *Preservation Pennsylvania v. Unemployment Compensation Board of Review,* 673 A.2d 1044 (Pa.Cmwlth.1996).

when he failed a drug screen administered as a condition of his reinstatement from an earlier discharge. An employer has the right to determine how to run its own business according to its beliefs, and its judgment will not be restricted absent compelling reasons. *Metropolitan Edison Co.* Employer's requirement that its employees in the case sub judice submit to random drug testing may therefore be deemed to be reasonable, and as a consequence, Claimant has no legal basis for his noncompliance.

Other cases relied on by Claimant fail to support his contention that he had legal justification for refusing the random drug test. In particular, in *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611 (3rd Cir.1992), the Third Circuit Court of Appeals stated that it did not believe "that the Pennsylvania Supreme Court would require private employers to limit urinalysis programs or personal property searches to employees suspected of drug use or to those performing safety-sensitive jobs." *Id.*, 963 F.2d at 627. Claimant cites numerous cases from other jurisdictions, as well as several law review articles, for the proposition that urination is a highly personal activity, which deserves protection under common law privacy rights. In *Vernonia School Dist. 47J v. Acton*, —— U.S. ——, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), the Supreme Court stated that drug testing conditions "are nearly identical to those typically encountered in public restrooms.... Under such conditions the privacy interests compromised by the process of obtaining the urine sample are in our view negligible." —— U.S. at ——, 115 S.Ct. at 2393. Also, the drug test in the present case, like that in *Acton,* looks only for evidence of use of certain illegal drugs and not for whether the employee is for example, pregnant or epileptic.

Pursuant to Employer's policy, Claimant was given the option of either reporting for testing or voicing any objections, problems or concerns to his supervisor. In *Bortz v. Unemployment Compensation Board of Review,* 76 Pa.Cmwlth. 436, 464 A.2d 609 (1983), the Court concluded that informative communication with the employer is to be considered

in sustaining the employee's burden to establish good cause for the violation of a work rule and that, where feasible, the employee must notify the employer of the reason for noncompliance. Here, Claimant made no such attempt. It was not until Employer contacted Claimant after his refusal to report for testing that he stated that he did not intend to submit to the test, representing another factor to be considered by the Court in evaluating Claimant's good cause arguments. In view of the foregoing, the Board did not err in determining that Claimant's reasons for noncompliance did not amount to good cause.

Claimant argues as well that his actions cannot be considered willful misconduct because Employer did not comply with its disciplinary guidelines for refusals of drug testing. He cites *PMA Reinsurance Corp. v. Unemployment Compensation Board of Review,* 126 Pa.Cmwlth. 94, 558 A.2d 623 (1989), where this Court held that an employer must follow its own progressive disciplinary system in discharging an employee, and when it fails to do so, the employer cannot establish that the discharge was for willful misconduct under Section 402(e). According to Claimant, Employer's disciplinary guidelines provide that employees are only subject to immediate discharge for "major" offenses, and refusal to report to a drug center is not listed in the guidelines as a major offense. He asserts that the proper disciplinary action under Employer's random drug testing policy would be a suspension, followed by completion of rehabilitation, return to work and follow-up testing.

In response, Employer states that Claimant was discharged for insubordination, which is listed as a major offense in the disciplinary guidelines. Claimant was advised by letter that he was discharged for failing to follow his supervisor's instructions and poor job performance. The supervisor testified that a major concern of Employer is the fact that the Beaver Valley nuclear facility operates under the guidelines of the Nuclear Regulatory Commission and that any insubordination that reflects on an individual

makes that individual unsuitable to perform work at the facility. Hence, it is clear from the record that Claimant was discharged for insubordination in failing to follow his supervisor's instructions, not merely for refusing to report for drug testing.

In conclusion, there is no evidence of record to demonstrate that Claimant, as a management employee, was treated differently from bargaining unit employees with respect to an employee's failure to report for drug testing. In *American Racing Equipment, Inc. v. Unemployment Compensation Board of Review*, 144 Pa.Cmwlth. 310, 601 A.2d 480 (1991), the Court stated that the essence of disparate treatment is that similarly situated people are treated differently as a result of improper criteria. The Court noted that managers are not similarly situated with non-managerial employees and may be treated differently based on their level of responsibility. Although such distinctions can be lawfully made, the facts here are that Claimant occupied a managerial position where his job duties included work connected with a nuclear power plant, and he was the only employee out of approximately 1300 employees in his division who refused to submit to random drug testing. His arguments about Employer's disparate treatment, therefore, ring hollow. For the reasons discussed, the Court affirms the order of the Board.

### ORDER

AND NOW, this 7th day of April, 1997, the order of the Unemployment Compensation Board of Review is affirmed.