IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tina Walker,                             :
                    Petitioner           :
                                         :   No.  180 C.D. 2018
          v.                             :
                                         :   Submitted:  November 13, 2018
Unemployment Compensation                :
Board of Review,                         :
                    Respondent           :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE McCULLOUGH                                    FILED:  January 24, 2019


          Tina Walker (Claimant) petitions for review of the December 28, 2017 order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision that found Claimant ineligible for unemployment compensation (UC) benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1]

          Claimant was employed as a food service work manager with Universal Institute Charter School (Employer) from August 25, 2015, until May 12, 2017.  One of Claimant's duties required her to submit invoices and order forms to a supervisor

---

[1]  Section 402(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act."  43 P.S. §802(e).

who worked in a different area of Philadelphia, and on May 3, 2017, Claimant left her workplace to do so, "while on the clock." (Finding of Fact (F.F.) No. 4.) After submitting the documents to her supervisor, Claimant went to a rental car facility to return a rental car and pick up her personal vehicle. Although this took longer than Claimant expected, she did not inform her supervisor that she was running late. Claimant ultimately did not return to work on May 3; however, Claimant's co-worker used the last four digits of Claimant's social security number provided to her by Claimant to clock Claimant out at the end of the day. Claimant subsequently reported to work the following day. (F.F. Nos. 1-8; Certified Record (C.R.) Item No. 10, at p. 5-6.)

The following week, Employer terminated Claimant for theft of time and falsification of records based upon the May 3 incident. Employer provided Claimant a progressive disciplinary action report which stated, in pertinent part,

> On May 3, 2017, [Claimant] left [work] shortly after breakfast ended (9:30am) to deliver paper work [sic] to the corporate office. However[,] she never returned to [work] after leaving the corporate office. Around 2:30pm, [Claimant] called [a co-worker] and asked [her] to punch [Claimant] out[.] After reviewing the cameras . . . , we noticed [the co-worker] punching [Claimant] out on the clock . . . . When we pulled the [] records, the time that [the co-worker] was punching [Claimant] out is what appeared on [Claimant]'s time card.

(C.R. at Item No. 3.) The report provided a space for Claimant to respond to the allegations, but Claimant left the space blank and simply acknowledged receipt of the form by signing and dating it. Employer also issued Claimant a termination letter reiterating the charges and stating that Claimant was being discharged for falsification of company records and stealing company time. (F.F. Nos. 9-12; C.R. at Item No. 3.)

2

Claimant applied for UC benefits and, on July 14, 2017, the local service center found Claimant ineligible under section 402(e) of the Law because she was discharged for conduct that constituted willful misconduct. (C.R. at Item No. 5.) Claimant appealed, stating that "[i]t was [an] accident that somebody [] clock[ed] me out," and asserting that she did not request the co-worker to do so. (C.R. at Item No. 7.) A hearing before a referee was held in September 2017, at which Claimant appeared on her own behalf. No representative of Employer appeared.

During the hearing, Claimant acknowledged that she left work early to submit paperwork to the corporate office and did not punch out, noting she "was supposed to go back to the . . . school, but [she] never made it back." (C.R. at Item No. 10, at p. 4.) Claimant stated that she then decided to return her rental car and pick up her vehicle; however, when she got to the car rental business, she discovered it had relocated and "had to find out where this other rental place . . . moved to." *Id.* at p. 5. Claimant explained that she did not call her supervisor to tell her that she was going on a personal errand because she had heard that her supervisor was leaving work early. Claimant also stated that she "didn't think it was a problem," because the supervisor "normally let us do it," but acknowledged that she had "messed up." *Id.* Claimant testified that she did not return to work because the errand ended up taking longer than she thought, but acknowledged that she could not produce the rental agreement. *Id.* at p. 7.

When asked why another employee had used her social security number to clock Claimant out, Claimant stated that she did not ask that co-worker do so and contended that the co-worker "accidentally clocked [Claimant] out," believing she was clocking herself out. *Id.* at p. 6. When asked how the co-worker had Claimant's social security number, Claimant indicated that she had given it to that co-worker on

a prior occasion when "our machine wasn't working." *Id.* Additionally, when the referee asked Claimant why she signed the disciplinary report, Claimant stated it was because "they told [her] it was just a receipt" and that she was not aware she had a choice not to sign it. *Id.* Claimant did not address her failure to enter any comments in the place provided on the form.

The referee issued a decision and order affirming the denial of benefits. In his reasoning, the referee noted that courts of this Commonwealth have consistently held that a knowing falsehood or misrepresentation bearing upon a claimant's employment constitutes willful misconduct and that, although it is the employer's burden to prove that the discharge was for willful misconduct, that burden may be met by testimony elicited from the claimant, even if the employer fails to appear at the hearing. The referee went on to conclude that Claimant's testimony was neither convincing nor credible, noting that, without informing her supervisor, she failed to report back to work because she was conducting personal business while on the clock. The referee also found that Claimant did provide the last four digits of her social security number to her co-worker to use for clocking out and, in doing so, demonstrated a disregard of the standards of behavior that an employer has the right to expect of an employee.

Claimant appealed to the Board, arguing that the referee incorrectly relied on hearsay evidence, to wit, documents submitted by Employer, including the termination letter, the progressive disciplinary report, and a photocopy of Employer's rules and policies, but the Board affirmed. The Board adopted and incorporated the referee's findings and conclusions and additionally rejected Claimant's hearsay argument, stating the following:

> The [r]eferee's decision was based on [] [C]laimant's testimonial admissions; her tacit admission in signing and

4

failing to enter any comments on [] [E]mployer's Progressive Disciplinary Action Report; and the Referee's rejection of [] [C]laimant's further testimony that her coworker accidentally clocked her out. If anything, the coincidence of a coworker clocking [] [C]laimant out, using the last four digits of [] [C]laimant's Social Security number, on a day [] [C]laimant performed personal business "while on the clock" and ended up never returning to work, after dropping documents off to her supervisor at another location, represents circumstantial evidence supporting [] [E]mployer's charges. Nonetheless, circumstantial evidence may constitute substantial evidence in unemployment compensation proceedings. See, e.g., *Zonca v. Unemployment Comp. Bd. of Review*, [] 437 A.2d 1083, 1084 (Pa. Cmwlth. 1981) (police officer's testimony about footprints in the snow held to be substantial evidence).

(Board's Op. at 1.)

Claimant filed a petition for review in this Court arguing (1) the Board erroneously disqualified Claimant for conduct other than her alleged falsification of time, which was the listed reason for her discharge; (2) the Board lacked substantial evidence to find that Claimant engaged in willful misconduct where Employer did not offer competent evidence and Claimant denied the allegation of misconduct; and (3) the record lacked circumstantial evidence to support the Board's finding of willful misconduct.[2]

---

[2] Our review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Hessou v. Unemployment Compensation Board of Review*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008). Findings of fact made by the Board, which are not specifically challenged, are conclusive upon review. *Campbell v. Unemployment Compensation Board of Review*, 694 A.2d 1167, 1169 (Pa. Cmwlth. 1997).

**Discussion**

In her first argument, Claimant asserts that the Board erroneously based its determination that Claimant was ineligible for benefits upon conduct other than her alleged falsification of timesheets, which was the reason Employer listed for her discharge. More specifically, Claimant argues the Board erred in considering Claimant's failure to report back to work and the fact that she engaged in personal business while on the clock because those actions were not the "proximate cause" of her discharge. (Claimant's Br. at 9.) Claimant contends that Employer discharged her solely for violating the rules by having a co-worker clock her out and, thus, the Board was restricted to considering that allegation alone because an "employer's stated reasons for the discharge must be the actual cause of the claimant's unemployment." *Id.* (quoting *Charles v. Unemployment Compensation Board of Review*, 764 A.2d 708, 711 n.4 (Pa. Cmwlth. 2000)).

Claimant is correct that the Board "may not in its findings rely on reasons for discharge that were not considered relevant by the employer," *Tundel v. Unemployment Compensation Board of Review*, 404 A.2d 434, 435 (Pa. Cmwlth. 1979); however, we disagree with Claimant's assertion that the Board did so here. Contrary to Claimant's repeated assertion that the only actual reason for her discharge was because she falsified records by having a co-worker clock her out, the termination letter given to Claimant specifically stated that she was "being terminated for . . . ***stealing company time***." (C.R. at Item No. 3) (emphasis added). Claimant inexplicably contends that her failure to return to work and choice to engage in personal business while on the clock, however distasteful to the Board, could not have constituted "stealing company time" and that it was an error for the Board to

6

consider it; yet, Employer's termination specifically referenced those actions in its explanation for her termination:

> Based on the investigation, you dropped off information to the corporate office in the morning, approximately 9:30 AM, the visit was brief, and ***you never returned to school***. You subsequently called a food service worker and asked her to clock you out at 2:30 PM. We reviewed surveillance footage which reflected the employee clocking you out at the time reflected on your time sheet. You are being terminated for falsification of company records and ***stealing company time***.

(C.R. at Item No. 3) (emphasis added).

Furthermore, Claimant has not explained how her choice to engage in personal errands from approximately 9:30 a.m. until the conclusion of the work day, while remaining on the clock and being paid her hourly wages, and her subsequent decision not to return to work could be considered something other than theft of company time. As such, it cannot be said that the Board determined Claimant was ineligible for benefits for reasons not cited by Employer as causing her termination, since theft of time was specifically listed in her termination letter. *Cf. Saleem v. Unemployment Compensation Board of Review*, 35 A.3d 1283, 1290 (Pa. Cmwlth. 2012) (determining the Board erred in holding that, because an employer's appeal from a local service center's determination was "non-specific" and "there was no surprise," it could consider whether the claimant was ineligible for benefits "for a reason not asserted by [the e]mployer until the hearing before the referee"). Thus, we reject Claimant's argument that the Board erred in considering Claimant's theft of time to be one of the reasons she was ineligible for benefits.

Claimant next argues that the Board lacked substantial evidence to support its determination that she engaged in willful misconduct where Employer

7

failed to offer any "competent" evidence and Claimant denied the alleged misconduct. (Claimant's Br. at 11.) Claimant asserts that Employer failed to present any evidence of Claimant's misconduct that was not hearsay and that the Board "attempt[ed] to work around this deficiency" by relying on conduct that was not the cause of her discharge and her silence when presented with the disciplinary report. *Id.* at 12. Claimant further asserts that, contrary to the Board's opinion, "there is no admission by [] [C]laimant in the record of the alleged willful misconduct." *Id.* at 13.

This Court has consistently held that receiving pay for hours not worked or using work time to attend to personal affairs without authorization can constitute willful misconduct. *See Temple University v. Unemployment Compensation Board of Review*, 772 A.2d 416 (Pa. 2001) (holding misconduct where a claimant received pay for hours not worked despite a supervisor's approval of such conduct); *Oyetayo v. Unemployment Compensation Board of Review*, 110 A.3d 1117 (Pa. Cmwlth. 2015) (holding the use of work equipment for personal reasons constituted willful misconduct); *Gane v. Unemployment Compensation Board of Review*, 398 A.2d 1110 (Pa. Cmwlth. 1979) (holding the deliberate falsification of remittance slips equated to willful misconduct). "An employee's theft from an employer is willful misconduct. An act of theft disregards the employer's interests and the standards of behavior that the employer has a right to expect of an employee." *On Line, Inc. v. Unemployment Compensation Board of Review*, 941 A.2d 789, 790 (Pa. Cmwlth. 2008). Additionally, this Court has held that even a single instance of theft from an employer can constitute willful misconduct. *Stokes v. Unemployment Compensation Board of Review*, 379 A.2d 913 (Pa. Cmwlth. 1977).

Willful misconduct is defined as (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard of

8

the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425 (Pa. 2003). Whether a claimant's conduct constitutes willful misconduct is a question of law fully reviewable by this Court on appeal. *Temple University*, 772 A.2d at 418 n.1. If an employer alleges misconduct because of a claimant's violation of a work rule, the employer must prove the existence of the rule and its violation, and the burden then shifts to the claimant to show good cause for his actions. *McKeesport Hospital v. Unemployment Compensation Board of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993).

Hearsay evidence, admitted without objection as it was here, may only support a finding if it is corroborated by any competent evidence of record. *Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976). In this case, while Employer did not attend the hearing before the referee, it did submit various documents into the record without objection from Claimant, including the disciplinary report, a termination letter, and a copy of Employer's policies listing dismissal as the consequence for certain first-time offenses, including theft and falsification of company records such as time cards. (C.R. at Item No. 3.) As the Board observes, Claimant herself corroborated much of Employer's evidence during the hearing by admitting that she chose to go on a personal errand without calling her supervisor or clocking out beforehand and that, in doing so, she "messed up"; the errand ended up taking too long and she chose not to return to work for the remainder of the day; she had given her social security number to a co-worker for the purpose of clocking her out, albeit on a previous occasion; and that the same co-

9

worker clocked Claimant out at the end of the day at issue using Claimant's social security number.

Although Claimant argues that Employer was required to present some further supporting evidence, that is incorrect as this Court has repeatedly held that an employer's burden in willful misconduct cases may be carried either in whole or in part by the claimant's testimony even where an employer fails to appear at the hearing. In *DiGiovanni v. Unemployment Compensation Board of Review*, 404 A.2d 449, 450 (Pa. Cmwlth. 1979), a claimant chose to leave his workplace after being directed by his employer to perform a particular task. Because claimant appeared at a hearing before the referee and his employer did not, the claimant argued the Board erred in denying him benefits because the employer did not meet its burden when it failed to present evidence. This Court disagreed and listed seven prior cases in which a claimant was denied benefits despite the failure of the employer or one of its necessary witnesses to appear at the hearing. We noted,

> None of th[o]se decisions resulted in an automatic reversal of a Board decision for the employer or the granting of benefits to the employee simply because the employer failed to appear at the hearing or present any competent evidence of willful misconduct. **On the contrary, the employer's burden was carried by the claimant's own testimony, either in whole, . . . or in part, by corroborating unobjected-to hearsay evidence of the employer**.

*Id.* at 450 (emphasis added). This result, we determined, was due to the "long-recognized duty of the Board to protect the unemployment compensation fund from improper claims, and its corollary that the Board has the power and duty to investigate *all* the facts of a given case." *Id.* (emphasis in original). Accordingly, we held, "**[I]f a claimant's own testimony establishes with sufficient certainty the**

10

**crucial facts of a case, we see nothing improper in the Board's relying on that testimony when making its findings of fact**." *Id.* (emphasis added).

Likewise, in *Moore v. Unemployment Compensation Board of Review*, 578 A.2d 606 (Pa. Cmwlth. 1990), a claimant argued that his employer failed to prove the existence of the policy he violated, which resulted in a finding that he engaged in willful misconduct, because the employer did not appear at the hearing before the referee. As in this case, the claimant acknowledged that the policy was listed in the employer's documents that were admitted at the hearing but argued that the documents were hearsay and could not be used to support a factual finding that the policy existed. *Id.* at 609. This court disagreed, noting that "[e]ven where an employer fails to appear [and has] the burden of proving willful misconduct, benefits may be denied if the employee seeking benefits proves the employer's case." *Id.* at 608-09. We determined that based upon the claimant's admissions in his testimony, substantial evidence existed for the referee's findings, which supported the legal conclusion that the claimant engaged in willful misconduct. *Id.*

Finally, in *Thornburg v. Department of Public Welfare*, 406 A.2d 1224 (Pa. Cmwlth. 1979), where the Department of Public Welfare upheld the denial of benefits to two married claimants under the Aid to Families with Dependent Children program, we affirmed, reiterating that a claimant's own testimony can be the sole substantial evidence supporting a hearing examiner's findings. *Id.* at 1225.

Here, Claimant's testimony, as outlined above, corroborated the Employer's hearsay evidence by, at a minimum, confirming that she stole company time. As such, there is substantial evidence supporting the referee's following findings:

> 3. On May 3, 2017, the [C]laimant left the workplace to submit the documents to the supervisor.

11

> 4. The [C]laimant after submitting the documents went to pick-up [sic] her car while on the clock.
> 5. The [C]laimant did not inform the supervisor that she was getting late, and would not return to the workplace.
> 6. The [C]laimant reported for work the following day.
> 7. The [C]laimant had provided the last four digits of her social security card number.
> 8. The [C]laimant's co-worker used the last four digits of the [C]laimant's social security number and used them to clock the [C]laimant out.

(F.F. Nos. 3-8.)  Accordingly, we agree with the referee's conclusion that "[C]laimant was conducting her personal business while on the clock," which we note occurred from approximately 9:30 a.m. until the conclusion of the work day, "indicat[ing] a disregard of the standards of behavior that an employer has the right to expect of an employee," and that such conduct equated to willful misconduct.  (Referee's Order at 3.)  Based upon this conclusion, we need not reach the merits of Claimant's remaining argument.

Accordingly, we affirm the order of the Board finding Claimant ineligible for benefits.

_____
PATRICIA A. McCULLOUGH, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tina Walker,                          :
                    Petitioner        :
                                      :    No.  180 C.D. 2018
            v.                        :
                                      :
Unemployment Compensation             :
Board of Review,                      :
                    Respondent        :

## ***ORDER***

AND NOW, this 24th day of January, 2019, the December 28, 2017 order of the Unemployment Compensation Board of Review is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge