# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenrick Bourne, : 
                    Petitioner : 
                     : 
          v. :   No. 1399 C.D. 2023
                     :   Submitted: October 8, 2024
Unemployment Compensation : 
Board of Review, : 
                Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
              HONORABLE MATTHEW S. WOLF, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: November 21, 2024**


      Kenrick Bourne (Claimant), pro se, petitions for review of an Order of the Unemployment Compensation Board of Review (Board), which affirmed the Referee's decision denying Claimant benefits pursuant to Section 402(e) of the Unemployment Compensation Law, 43 P.S. § 802(e) (UC Law).[1] On appeal, Claimant argues that the Board erred in finding that Claimant engaged in willful misconduct, thus, rendering Claimant ineligible for unemployment compensation benefits. For the reasons that follow, we are constrained to affirm the Board's Order.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

# I.  BACKGROUND

Claimant was employed as a maintenance custodian driver by the Southeastern Pennsylvania Transportation Authority (Employer) from June 5, 2000, through November 22, 2022, at which time he was discharged for violating Employer's Substandard Performance Policy.  (Referee's Decision, Findings of Fact (FOF) ¶¶ 1, 7.)  After Claimant's employment was terminated, Claimant applied for unemployment compensation benefits, which were denied by the Unemployment Compensation Service Center (UC Service Center) pursuant to Section 402(e) of the UC Law.  (Certified Record (C.R.) at 38.)  Claimant appealed, and the Referee conducted a hearing.  At the hearing, the Referee took testimony from Employer's witnesses, its Labor Relations Supervisor and its Director of Maintenance, and from Claimant.

Employer's witnesses testified Claimant was initially suspended then later resigned in lieu of termination from employment after he removed a handbag from a raffle table.  (*Id.* at 86-87.)[2]  Director of Maintenance described Employer's investigation, which included reviewing surveillance video and speaking with Claimant directly.  (*Id.* at 87-92.)  Director of Maintenance testified Claimant admitted to removing the handbag but "indicated it was a misunderstanding" as "[h]e wasn't sure how the raffle worked," although Claimant admitted he had been involved in similar raffles in the past.  (*Id.* at 89.)  Employer submitted into evidence a copy of its Substandard Performance Policy, which employees are provided.  (*Id.* at 92-93, 110-15.)  Director of Maintenance explained Claimant violated the rules therein related to personal conduct.  (*Id.* at 93.)  On cross-examination, Director of

---

[2] On November 22, 2022, Claimant was permitted to resign in lieu of termination under an agreement brokered by the union.  (Board's Brief (Br.) at 3 n.2.)  At the hearing, the Referee treated the resignation as a termination.  (*Id.*)

Maintenance admitted Claimant did not try to conceal the handbag when he removed it. (*Id.* at 94.)

Claimant testified he took the handbag "but misread the raffles." (*Id.* at 95.) When the Referee asked Claimant why he thought he was entitled to the handbag, Claimant responded:

> Yes what I read there, it said, free raffle, personal beeper. And I went up to the counter, and I asked the dispatcher for a pen. He said I don't need a pen, just sign my name here and get it. She gave me a pen and I walked back, and I signed the board. When I signed the board, just my name on it. When I signed the board then I bring back the pen and I was going to take a gift. And I went back there and took the gift and I walked out. I didn't hide it and I walked out with it in my hands. And I walked on. I walked back to my location, because it was across the street. I went to my car and put it in to my car. And when I put it in my car I went back, took a seat and started working again.

(*Id.* at 96.) Claimant described how the next day when he returned to work he was confronted about the handbag. Claimant reiterated that he did not "steal" the bag, that he "misread" the raffle, and that he returned the handbag. (*Id.* at 97-98.) Claimant also testified that another employee told him he won the raffle but he later discovered that was a joke. (*Id.* at 99-100.) Claimant introduced a copy of the sign-up sheet for the raffle and indicated that the winner line was blank when he signed his name. (*Id.* at 100-01, 116.) Claimant explained he did not know how his name was crossed off the sheet. (*Id.*)

Based upon the parties' testimony, the Referee found, in relevant part as follows:

> 2. [] Employer maintains a Substandard Performance Policy that, among other things, prevents employees from taking property that is not theirs.

3

3.  [] Employer maintains that a single violation of the Substandard Performance Policy can result in immediate termination of employment.

4.  [] Claimant was aware or should have been aware of [] Employer's Substandard Performance Policy.

5.  On September 12, 2022, Claimant took a handbag, valued at $350.00, from a raffle table to which he was not entitled.

6.  On September 13, 2022, Claimant returned the handbag.

7.  On November 22, 2022, following an investigation, [] Employer discharged [] Claimant for violation of [its] Substandard Performance Policy.

(FOF ¶¶ 2-7.)

The Referee determined that Employer met its burden of establishing that Claimant committed willful misconduct.  In so holding, the Referee noted, among other things, that the incident was caught on video and Claimant admitted during two internal hearings that he took the handbag.  (Referee's Decision at 2.)  Although Employer presented evidence of the Substandard Performance Policy, the Referee found "that no policy was needed in this matter to establish willful misconduct." (*Id.* at 3.)  The Referee further determined Claimant did not establish good cause for violating the policy, discrediting Claimant's testimony in its entirety.  (*Id.*) Accordingly, the Referee upheld the UC Service Center's determination denying Claimant unemployment compensation benefits based on ineligibility under Section 402(e) of the UC Law.  (Referee's Order.)

Claimant appealed to the Board, which affirmed the Referee's determination, adopting and incorporating the Referee's findings and conclusions.  (Board's Order at 1-2.)  The Board further found:

[C]laimant did not submit a raffle ticket to the raffle and wait for the union to announce a winner of the raffle prior to taking a handbag.

4

Because [] [C]laimant did not submit a raffle ticket to the raffle and wait for the union to announce the winner of the raffle, the Board concludes that [] [C]laimant's allegation that he thought that he won the handbag to be not credible.

(*Id.*) Claimant now seeks review by this Court.

## II.   PARTIES' ARGUMENTS

On appeal, Claimant argues he did not engage in willful misconduct and that taking the handbag was a misunderstanding. He contends he was misled by another employee, who told him he had won. Claimant argues he did not intend to steal the handbag, as evidenced by him being seen on surveillance video not trying to conceal the handbag's removal, and he returned the handbag immediately when asked. He further argues he was employed without incident for 23 years. Claimant asks the Court to reverse the Board's Order.

The Board responds that its findings are supported by substantial evidence, specifically the credited testimony of Employers' witnesses. While Claimant proffers a different version of events, the Board argues Claimant's testimony was not credited. The Board notes Claimant was aware of how the raffles worked, as he was employed there for many years and participated in prior raffles. The Board also asserts that immediately upon signing the raffle sheet, Claimant took the handbag. The Board further argues it did not err in concluding Claimant engaged in willful misconduct by engaging in theft. For support, the Board cites Employer's Substandard Performance Policy, two sections of which the Board argues Claimant's conduct violated, and of which Claimant was aware. The Board disputes that Claimant had good cause based on a misunderstanding, explaining the Board did not credit this testimony. Finally, to the extent Claimant argues his discipline was

5

disproportionate given the length of his employment, the Board asserts theft "of extremely modest amounts" has been held sufficient to constitute willful misconduct in the past. (Board's Brief (Br.) at 17 (citing cases).)

## III. DISCUSSION

Our "review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence." *Rivera v. Unemployment Comp. Bd. of Rev.*, 310 A.3d 348, 352 n.4 (Pa. Cmwlth. 2024) (citing *Gordon Terminal Serv. Co. v. Unemployment Comp. Bd. of Rev.*, 211 A.3d 893, 898 (Pa. Cmwlth. 2019)). *See also* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. "[T]he Board's findings of fact must be supported by [s]ubstantial evidence [which] is defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." *Cambria Cnty. Transit Auth. ("Cam Tran") v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019) (internal quotation marks omitted) (second and third alterations in original) (citation omitted).

"The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *Id.* (quoting *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006)). "This Court is bound to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony to determine if substantial evidence exists for the Board's findings." *Id.* (internal quotation marks and citation omitted).

6

Pursuant to Section 402(e) of the UC Law, an employee is not eligible for unemployment compensation benefits for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ." 43 P.S. § 802(e). In the context of the UC Law, we have defined willful misconduct as:

> (1) an act of wanton or willful disregard of the employer's interest, (2) a deliberate violation of the employer's rules, (3) a disregard for standards of behavior which the employer has a right to expect of an employee, or (4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Woodring v. Unemployment Comp. Bd. of Rev.*, 284 A.3d 960, 964 (Pa. Cmwlth. 2022) (internal quotations and citation omitted).

"The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct." *Gordon Terminal Serv. Co.*, 211 A.3d at 898. "Once an employer meets its burden of proving willful misconduct, the burden shifts to the employee to prove good cause for [the employee's] actions." *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 135 (Pa. Cmwlth. 2022). "An employee establishes good cause where [the employee's] actions are justified or reasonable under the circumstances." *Id.* "[W]hether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court." *Rivera*, 310 A.3d at 352 n.4 (quoting *Gordon Terminal Serv. Co.*, 211 A.3d at 898).

"When asserting that a discharge was based on a violation of a work rule, an employer must establish the existence of the rule, the reasonableness of the rule, the claimant's knowledge of the rule, and its violation." *Pierce-Boyce*, 289 A.3d at 136. "An employee who has no notice of a work rule will not be denied benefits based on

willful misconduct." *Id.* However, "an employee is charged with constructive notice of [a] rule or policy [if] it could have been discovered by due diligence." *Id.* (alterations in original).

Here, Employer satisfied its burden related to the existence of the applicable work rules. Specifically, Employer submitted into evidence copies of the policy and presented testimony that all employees are provided a copy of same at the commencement of employment. (C.R. at 92, 110-15.) Claimant did not deny that he was given a copy of the rules. (*Id.* at 94.) This policy is encompassed in Standard Rule ASR-7 (Personal Conduct) and Standard Rule ASR-9.A.3 (Prohibited Behavior/Activities). Rule ASR-7, entitled Personal Conduct, provides:

> Employees are expected at all times to conduct themselves in a manner which does not jeopardize or otherwise disgrace the public image of [Employer]. Any actions which are deemed to be insubordinate, uncivil, immoral, indecent, socially disapproved, or otherwise abusive to other employees, passengers or the general public will be considered as conduct unbecoming of an [] employee, and may subject the offending employee to disciplinary action up to and including discharge and other civil penalties depending upon the severity of the offense.

(*Id.* at 113.) Rule ASR-9.A.3., entitled Prohibited Behavior/Activities, in relevant part, provides:

> The following behaviors and/or activities are prohibited by all employees of the Authority. Each action is subject to disciplinary action, up to and including discharge
> . . . .

> 3. Participating in any illegal, immoral, or unauthorized activity.

(*Id.* at 114.)

Here, after an investigation, Employer discharged Claimant from employment for violation of these rules governing employee conduct. (*Id.* at 155.) Employer's

8

evidence, as described above, which was credited by the Board, is substantial evidence to support the Board's findings as to the existence of the policy and Claimant's awareness of the policy.

Even in the absence of a policy, we have long held that "[a]n employee's theft from an employer is willful misconduct. . . . [and] [a]n act of theft disregards the employer's interests and the standards of behavior that the employer has a right to expect of an employee." *Walker v. Unemployment Comp. Bd. of Rev.*, 202 A.3d 896, 901 (Pa. Cmwlth. 2019) (quoting *On Line, Inc. v. Unemployment Comp. Bd. of Rev.*, 941 A.2d 786, 790 (Pa. Cmwlth. 2008)). Moreover, "even a single instance of theft from an employer can constitute willful misconduct." *Id*. at 901-02. For example, in *Dolphin v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 817 C.D. 2019, filed February 4, 2020), slip op. at 6-7,[3] we agreed with the Board's determination finding that a claimant had engaged in willful misconduct by using the employer's windshield washer fluid to fill the reservoir in a personal vehicle. In affirming the Board, this Court held that because the Board is the "arbiter of credibility in UC cases," the Board properly found that the claimant's argument that he had permission to take the windshield fluid lacked merit. *Id*. at 6 (alterations omitted) (quoting *Deal v. Unemployment Comp. Bd. of Rev.*, 878 A.2d 131, 133 n.2 (Pa. Cmwlth. 2005)). Further, citing *Walker*, we found no error in the Board's finding that the claimant was discharged for willful misconduct, even where the claimant asserted that he had been employed for over 30 years and was never accused of stealing. *Id*. at 6-7.

---

[3] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

As to whether Claimant violated the policy, the Board found, based on the evidence, that he did by removing the handbag.  At the Referee's hearing, Employer presented evidence from Director of Maintenance, who testified that an investigation into Claimant's conduct was conducted, during which video surveillance evidence was reviewed showing that Claimant took the handbag from the raffle table.  (C.R. at 155.)  While Claimant argues the entire situation was a mistake or the result of a joke, importantly, the Board did not credit Claimant's testimony.  The Board is the finder of fact and is charged with making credibility determinations, which this Court cannot disturb. *Cambria Cnty. Transit Auth*, 201 A.3d at 947.  "[E]ven if there is contrary evidence of record, the [Board's] findings of fact are binding upon the Court where supported by substantial evidence." *Naborn v. Unemployment Comp. Bd. of Rev.*, 246 A.3d 373, 379-80 (Pa. Cmwlth. 2021).  Whether this Court would have made different credibility determinations is not relevant; we are constrained by the findings of the Board and we cannot alter those findings when they are supported by substantial evidence.

Claimant also asserts that based on his 23 years of employment with Employer, with no record of any prior incidents, he should be eligible for unemployment compensation benefits.  (Claimant's Brief at 5, 7.)  While Claimant was employed by Employer for over two decades, and had no previous incidents of theft, even one incident of theft can constitute willful misconduct under the UC Law, thus, rendering an employee ineligible for unemployment compensation benefits. *See Walker*, 202 A.3d at 901-02 ("[E]ven a single instance of theft from an employer can constitute willful misconduct."); *Reading Area Water Auth. v. Unemployment Comp. Bd. of Rev.*, 137 A.3d 658, 663 (Pa. Cmwlth. 2016) (citation omitted) ("We have no doubt that even one isolated instance of theft is sufficient to constitute

10

willful misconduct . . . ."). Because Claimant was not credited, he did not establish good cause existed for violating Employer's policy; we therefore are constrained to hold the Board did not err in concluding Claimant was ineligible for benefits under Section 402(e).

## IV.    CONCLUSION

After careful review, and constrained by our scope and standard of review, we must affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** President Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenrick Bourne, : 
                   Petitioner : 
                    : 
            v. :   No. 1399 C.D. 2023
                    : 
Unemployment Compensation : 
Board of Review, : 
               Respondent : 

## O R D E R

NOW, November 21, 2024, the Order of the Unemployment Compensation Board of Review, dated September 19, 2023, is **AFFIRMED**.


_____
**RENÉE COHN JUBELIRER,** President Judge